Thank you your honor may it please the court I'd like to reserve a minute of my time for rebuttal. This case arose starting in 2002 when Howell Petroleum started drilling or recompleting a series of wells that either went through or were adjacent to Williston Basin's federally certificated Elk Basin storage reservoir and as a result of the drilling and then operation of those wells Williston started seeing losses to this gas that it had in storage that were directly correlated to the amount of production that Howell had. So Williston Basin brought suit in the district court for Montana to stop the with Williston's Basin's duties and obligations under the Natural Gas Act to provide storage service to its customers. After the case was filed Howell filed a motion to dismiss for lack of subject matter jurisdiction and that was granted by the court on three grounds. All of them are wrong. The first was that the judge found that we could not have an injunction because what Howell was doing was producing gas and production of gas is excluded from the Natural Gas Act. Now it is excluded but the question isn't is it the production that's happening? The question is what's happening to the storage? What's happening to the certificated reservoir? Just I have to understand it this way. In real life a cracks and holes in them and the gas goes into the fissures and then it's later withdrawn from storage but in for my way of looking at it what I look at it is is it's a it's a bowl with a lid on it and the gas is in the bowl and the bowl is what the FDRC has defined as the physical boundaries of the reservoir the gas that's put in there is put in there either to have the ability to provide other people's gas to come out of storage or it's gas that people have put into storage for later withdrawal so they can go and heat houses and schools and hospitals and all of that kind of stuff. So what we have here is we have facilities that Howell drilled into the bowl that started causing the loss of production it's about storage because of their interference with the federally certificated storage operation. It's really a trespass isn't it? Well trespasses but the trespass is the state claim we're talking about why it's a federal question and that's about the storage. Is it a federal question? The federal question well there are two federal questions and the first is the Natural Gas Act says that the district courts of the United States have exclusive jurisdiction to enforce duties under the Act and our duty under the Act is to provide the storage service and Howell's activities are interfering with that duty. But there's there as I understood the argument you're not arguing that Howell's is violating a federal law or some that you're talking about it becoming more difficult for Williston to do something I didn't see where the didn't seem to be a question as to Howell's activities. No and that's of course that's what the judge found because that's what Howell argued but that's not correct because what that essentially is saying is that the Natural Gas Act only can be enforced as to the pipeline company the regulated entity and that any activities that interfere with that pipelines duties or cited three cases in our briefs where just the opposite has happened. There's the one case which is Panhandle versus Michigan Consolidated. There's Columbia Gas versus Burke and then there's a third one that just went out of my mind that and and oh it's the City of Cleveland versus Cleveland Electric Illuminating and that one of course is under the Federal Power Act but they're substantially the same statute as far as this is concerned. Let's say somebody comes to your reservoir with a big balloon and they fill it up with gas and march away with it so there's theft or conversion. Yes. But it also is in maybe in the sense you're saying you know interfering with your operation of the reservoir. Yes. Is there a federal question there that lets you challenge the person who filled up their balloon with your gas? Yes. It's exactly the same as the Columbia Gas versus Burke in which the people wanted to build a trailer on top of the pipeline and the court said no it's interfering with the pipeline so you have to move the trailer. The pipeline was buried under the ground. It wasn't that physically they had the trailer on the pipeline but it was the activity that was going to interfere with the pipeline company's ability to provide the service. It was certificated to provide that the court found was the reason why it was a federal question and it belonged in federal court. So in my hypothetical case, Williston could sue the gas thief in federal court saying it's an interference. I'm not sure I heard everything you said but I believe the answer is yes. You're saying in the hypothetical I pose, Williston could sue the thief of the gas in federal court asserting interference with its rights. Well, we'd have to catch the balloon filler because he could be gone very quickly but in this case if you caught the balloon filler you could sue him. Right, right. So but this is a little bit different because what we have here is if production doesn't count and if what you have to do is go to state court because the producer can do whatever they want then there can't be underground storage because it means all over the country producers could come and take out the gas and say well it's just production and it's not protected by the Natural Gas Act so we can do what we want. So you're saying state law is ineffective in some way to the extent that theft as in Judge Gold's hypothetical is something you can prevent under state law. Why don't you take care of the state law issues in state court? Well first of all because we have this this reservoir is physically located in two states and Howell's facilities are physically located in two states so we would have to sue in two different states in order to get complete relief whereas if we go to federal court we can have it all taken care of in one case. Sort of a practical consideration but that doesn't create a substantial federal question. Well I think it does but if this is not the only piece of the federal question here the second is what the judge said when he said we didn't that there couldn't be any injunction for condemnation because we didn't have a certificate covering the necessary territory and that's that was issued by what was the Federal Power Commission in 1949 and the subsequent certificates that have been issued specifically cover the bowl and Howell has drilled two wells into and through that bowl and those in our minute complaint are the specific facilities that we asked to condemn. Now what has FERC said about condemning other property interests without a CPCN? Has FERC issued any guidance or directions have they approved or disapproved because condemning a property interest of some third party that's not already approved in a CPCN? We don't have the authority to condemn property that is not related to the certificate. In other words if in this case there are wells outside of the certificated boundaries that Howell dug the existing certificate does not give us per se condemnation authority over those wells and that's not what we asked for before the district court. We asked only for condemnation of the two wells that go in physically to the existing certificated boundaries of the reservoir. But they're completed in some other zone correct? That's where the pipe ends is in some other zone and but it's of course it's a fact question about whether or not the facilities themselves and the way they were drilled by Howell are causing the leak. But are you saying Howell's doesn't have a property interest in those wells that are in some other zone that may affect your gas bearing area? That's right they have they have a property interest but we have condemnation authority to condemn facilities that are interfering with the storage that is currently certificated and that's what we've asked for. If Howell has a property interest in those wells what has FERC said about and you're seeking to condemn that property interest what has FERC said about doing that without a CPCN? We couldn't do it without one but we have one. I mean that's my point we only asked to condemn the facilities that are in our reservoir. Does it describe Howell's property interest? Yes and Howell recognizes that we can condemn them all we have to do is pay if we have the certificate. Howell's argument is we don't have the certificate but we do. But your certificate doesn't specifically reference Howell's property interest? No our certificate was issued in 1949 and so that was before these facilities which were done in well starting in 2002 I don't know which particular year these exact wells were dug or re-completed. Does your bowl have a height dimension? Like I assume it covers a certain depth it doesn't go to the center of the earth right? Correct it goes from the top of the Dakota to the bottom of the that's the top to the bottom of the bowl. So if somebody wants to extract a mineral resource at a lower level if they have the technology to do it do they have to drill through your through your reservoir? Yes well in this case yes there are there have been many wells through the years that have been dug because the Elk Basin field is an active oil and gas production field and it has oil production above our reservoir it has gas production below our reservoir and it has oil production below our reservoir in lower formations than ours is in the Cloverley formation and so through the years many many wells have been dug through the reservoir but until these particular wells were dug we didn't lose any appreciable gas ever it's since 1949 it was after these particular wells got dug that we started losing the gas and it's why it's those wells we want to condemn. How does the so-called map rule figure in here does that have any relevance? No and the reason why it doesn't is because what we're seeking to condemn is the property that's within the existing certificated boundaries and the map rule wouldn't apply in that kind of a if you wanted to look at it that way the map rule just says we have to be within what we're entitled to and we are within what we're entitled to here and and and and that's where the judge got mixed up in thinking that we're talking about the facilities that are over here outside the boundaries but the complaint says specifically well 195 and 19-1 and those wells how admits are dug through our reservoir. And you exercise condemnation through a federal cause of yes. You have pending a state court action right? Howell sued us in state court yes they have pending a state court action. They sued okay so is that on hold or what? I'm sorry is that on the what? Is that case on hold? No. It's not state it's ongoing. It's ongoing yes it is ongoing. You want to save the minutes of your time for rebuttal? Yes thank you your honor. Good morning. My name is Patrick Day. I'm here today representing. Actually it's afternoon. Oh you're right it is. Good afternoon. I want to I want to address a couple of questions that were raised because they go right to the heart of this case and I'll just start with Mr. Hall's bowl. Our properties that we're developing and that our wells are completed into are in different bowls. As you pointed out Justice Gould you can drill through an existing formation to actually complete your well and produce gas from a deeper formation. Here the two wells that are described in the complaint are completed in deeper formations than their bowl. We just drilled through the bowl to the deeper ones. The deeper ones have interests owned by hundreds and hundreds of other parties including the Federal Government and it's actually part of it's a formation that's a part of a Federal unit. So this case is really about their attempt to shut in production owned by hundreds of other parties on properties that is not covered by the certificate. And Mr. Hall made an argument to the effect that their condemnation complaint was limited to just the two wells. That's not in fact what they pled. They pled in paragraph 13 that their formation is limited to the Cloverley formation which it is. They pled in paragraphs 16 and 17 that the two wells were completed into the Sundance and the Morrison formations beneath the Cloverley which they are. And then they seek in their condemnation claim to seek condemnation of the wells and formations and mineral interests related thereto. So on the face of their condemnation complaint they expressly plead for properties that are outside their certificate. Could they under their CPCN stop the wells that are drilled through the Cloverley formation through the area described in the CPCN? And would you still be able to have access to the lower formation if they did so? No. The CPCN does not regulate the property rights associated with the various formations. So if you're the owner of deeper mineral rights you have the right under property law to drill through zones that are above that even if they're used for deeper formations. That's common practice. Is it the nature of an easement? Like an easement you can go through? No. It's actually an inherent part of the mineral right. You have the right to access your minerals even if you go through other mineral properties. It's sort of like an easement. Yes. It's sort of like an easement. We don't call it that. I'll show you that I don't forget property one. Well, we oil and gas lawyers don't call it that. But you're right. It's conceptually that's what it is. I didn't take oil and gas. Okay. I want to address the Federal jurisdictional issue because I want to make an important point in my time. What Willison-Basin's theory of the case is for Federal question jurisdiction is directly contrary to United Supreme Court precedent. And it's hard to tease out of their briefs exactly how they come up with the Federal question, but I'll give you what I understand the argument to be, although it's not articulated this plainly. Their argument is that a jurisdictional provision in the Natural Gas Act, which gives jurisdiction to courts to enforce the Act, creates a private cause of action for them to bring such an action to protect their storage obligations under their certificate. So what they're really saying is that a jurisdictional provision creates a private right of action. The private right of action they say it creates is the right to enjoin natural gas production that may be interfering with their operations. And therefore, they have stated a Federal claim. The problem with that is, first, we don't think the jurisdictional provision creates a private right of action. It doesn't say that. And we think, as the district court below did, that what it says on its plain language is that you can sue somebody who's violating the Act to enforce the Act. You can't sue somebody who's not covered by the Act. How do you distinguish that Burke case? In the Burke case, the court, what the court said was that the authority of courts under the condemnation statute, which is 717FH, is broad enough to define easements that are condemned under that provision. And since the court could and have the power to condemn and define the easement, the court could enforce an easement that was acquired by negotiation short of condemnation. I think the Burke court did construe a private right of action under that provision of the Natural Gas Act, but the activities that the Burke court sought to enjoin were not exempt from the natural gas production, which the United States Supreme Court has said repeatedly is outside the purview of the Act for very good reasons. So what they're trying to do is use a jurisdictional provision to enforce the Act to swallow entirely the exemption contained in the Act. And because that's a legal impossibility under the Act itself and under Supreme Court precedent, what they're doing here is trying to create a Federal question which simply doesn't exist. And Judge Siebel understood that and dismissed there what are purely State law claims. How would you handle my balloon thief hypothetical? Would you say there's no Federal claim for interference against the person stealing gas? Well, let me answer your question. I think there's two ways to answer it, one way which I think is correct and one way which some courts have said is possible. The Burke approach would have been, had we, say, completed our well in their formation that's covered by the certificate, let's say we drilled right into the middle of it and then tried to produce from it, I think the Burke analysis would have said because they have authority to condemn that, we have authority to enforce your rights to that condemned area. So in your hypothetical, if it's the balloon that's being protected, the Burke court would have said yes. However, I would submit that the exemption under the Natural Gas Act of producing and gathering gas means just what it says. And so there isn't a Federal cause to enjoin the balloon thief. There are many State remedies which are being pursued in State court as we speak. We have a trial set in September, and Wilson Basin has made all of their conversion and trespass claims which are going to trial in State court this September. The question of ownership of produced gas that may have migrated away or outside the boundaries of a certificate is frequently encountered in the law. And this is not an unusual problem. The only thing that's unusual about this case is that we're in the Ninth Circuit arguing that the Natural Gas Act addresses it when it does not. And we've cited those cases to the Court in our briefs. Justice Fischer, you asked about the MAP rule. We're only judges in this. Only judges. No justice in the Ninth Circuit. All right, Judge Fischer. I usually argue in the Tenth Circuit where there are justices, but we'll have to talk to them about that. The MAP rule is very clearly developed. There aren't any Ninth Circuit cases on it because it's never come up. But in the Sixth Circuit in the Columbia gas case, which we've cited in our briefs at 776 Bed Second, what – and this is an answer to the question that you asked, too, Judge – when you have a certificate, it covers a bowl in the ground, not the part above it, not the part below it, and not the part that may reside outside the boundary. So the MAP rule defines the certificated area. Everything that is outside of that is owned as private property by others. And Congress has been very clear that if, in order to maintain storage, because there's gas leaking out, migrating away, as is alleged here, the remedy is to go back to FERC and ask FERC the question, is it in the public interest to protect this storage area by allowing condemnation of the private property outside, such that the reservoir can be expanded to the areas where the gas is migrating? That is, in fact, the correct procedure, as illustrated in the Columbia gas case, as in the B&J oil case, which we also cited in our briefs. And what FERC does is make the public interest determination that the migrating gas and the public interest in storage outweigh the private right to produce, such that they should be condemned. What we're doing in this lawsuit is trying to protect our private property from a judicial taking without compensation. The allegation of the complaint is a request to the district court to permanently enjoin the production, shut it in. And if you read the prayer for relief, it says, require HAL to plug and abandon their wells. So the Williston Basin is attempting to use the court system to take property outside their certificate, take it without compensation forever. And what we said to Judge Siebel below was, if it's in the public's interest to expand the reservoir by stopping this production, FERC needs to make that determination, issue the certificate, at which point the courts then do have jurisdiction to order a shut-in of all production pending a compensation hearing. What we're trying to protect here is not just our property rights in these formations outside the zone, but the rights of hundreds of others on whose behalf we operate these wells. And they have property rights which the law protects. And until FERC decides that they should be condemned, we have every right to produce under state law. And their remedy is they have many remedies. They can go to our Oil and Gas Conservation Commission in Wyoming and ask for regulatory orders involving our production. They haven't done that. They can go to FERC and they can ask for a certificate of public convenience to condemn. They haven't done that. What they've chosen instead is this pursuit of legal Well, to the extent it's a condemnation claim, I assume that just compensation has to be a component of that. If they get condemnation authority, we would have the benefit of a condemnation award. Their request in the lawsuit doesn't say that. They just want a permanent shut-in. There's no suggestion in their complaint that they'll pay for that, nor is there an allegation anywhere in their complaint that FERC has decided to extend condemnation authority over our private property. And it's for that reason, among many others, that the condemnation count is spatially defective. Condemnation is an in-rem proceeding. It's a claim against a specific piece of property. Here, they plead to condemn the Sundance Formation, which their own pleading says is outside their certificate. They can't do that under Federal law until FERC gives them the authority to do so with an amended CBCN. And they haven't asked for that. What they've done is they've said, we'll just ask the district court to shut it all in forever, which, of course, is the same thing as taking the property. It just skips the FERC process. It skips the public interest determination, and it doesn't afford us any assurance of compensation for our property. Can you access the formation in which those wells are currently completed? Can you access through slant drilling or whatever without going through the storage formation? You can. And, in fact, we have some of the wells that are outside the storage area that are described in the briefs are completed to the south of their storage area, and those are also in the Sundance Formation. So it's actually occurring in several different places we're producing from the Sundance, and they're trying to stop that everywhere the Sundance can be produced from, even if it goes miles beyond their lateral boundaries. That's what they're trying to accomplish by injunction. We don't have a problem with being condemned. If FERC says that they want to preserve this storage area and give them authority to take our property rights, we have the protection in knowing that, A, the public interest determination has been made, and, B, we'll get paid for whatever property rights we have. But asking a district court to use the Natural Gas Act to enjoin without compensation production, when the United States Supreme Court has said production is not covered by the Act, is just not valid. It doesn't state a Federal claim. It doesn't state any claim at all recognized by the law. And the district court, therefore, properly dismissed this lawsuit. Putting aside your argument that they're claiming or they're requesting an injunction and just focusing on if they're condemning the wells that actually go through their formation, does their CPCN allow them to do that? No. And that's the MAP rule that Judge Fischer was asking about. The wells go through the cloverleaf horizon but don't produce any gas from it. Their storage right in it is limited to the right to store gas. It's not ownership of the rock, so to speak. Right. So we have the right under mineral law, under mineral property law, to drill through to get to the deeper formations. And if they want to take that right, they have to condemn. But what we've done with our wells is produce from a deeper formation that's outside their certificate. And their complaint says, we don't want just a hundred feet of drill pipe in the middle of your well. They actually say, we want all your formations and mineral interests, which they don't have the right to. With that, I'll complete. Thank you. All right. Thank you. Two things. First, our complaint specifically says, under condemnation, that the property that Williston Basin seeks to acquire includes Howell Anadarko Well Sundance 195 and Howell Anadarko Well Number 19-1. It doesn't say the property we wish to take without compensation. It says acquire. And that's part of what the condemnation and eminent domain provision of the Natural Gas Act is. You don't just get to condemn property and walk away. You have to pay just compensation for the process. But the Natural Gas Act point blank says that the holder of the certificate has the right to exercise eminent domain for all necessary land and other property needed for its use under the certificate. And that's what we're trying to do here on the condemnation claim. This property goes through our reservoir. And that's what we have specifically sought to condemn under the present Certificate of Public Convenience and Necessity. And it's not to be without compensation because that's not how it works. And are you seeking an injunction, as opposing counsel was suggesting, to stop production from their wells that go into the Sundance Formation? Yes. But you see what's being left out of this and what I tried to talk about before was, it's a fact question whether they're only producing in the Sundance Formation or whether because of the way they re-completed and completed the wells, they're actually taking gas out of the storage reservoir. And there are a number of ways that that can happen because there can be holes in the pipe. They cannot have submitted properly the way they're supposed to. But all those are fact questions at which the judge should have looked when the case went on, as opposed to in the first instance, did he have jurisdiction to take the case? And we believe that he did. Just if you want only the condemnation, we have existing authority to do that. Thank you. Okay. The case argued is submitted. We appreciate the good argument of both counsel. It's a fascinating case. And that will bring us to the last case on calendar. Okay. That will be United States v. Winfrey.
judges: Fisher, Gould, Ikuta